UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-558-CRS

**MICHELLE MCMILLEN, individually**
**and as Administratrix of the Estate of**
**Gynnya McMillen,**                                                    **Plaintiffs,**

v.

**REGINALD WINDHAM, et al.,**                                           **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for protective order (DN 60).[1] Plaintiffs Michelle McMillen, individually and as administratrix of the estate of Gynnya McMillen ("Plaintiffs"), filed a response (DN 69), and Movants filed a reply (DN 85). For the following reasons, the motion for protective order (DN 60) is **granted in part** and **denied in part**.

### BACKGROUND

This case stems from the death of sixteen-year-old Gynnya McMillen ("Gynnya") on January 10 or 11, 2016, while she was in the custody of the Lincoln Village Regional Detention Center ("Lincoln Village"), a facility run by the Kentucky Juvenile Justice Department. (*See generally* DN 1, Complaint.) At the time of Gynnya's death, Movants were all employees of Lincoln Village. (*Id.* at ¶¶ 11, 1-18.) In the motion for protective order, Defendants ask the Court, pursuant to Rule 26 of the Federal Rules of Civil Procedure, to restrict the use of certain

---

[1] As the Court has previously noted (DN 87), the motion for protective order (DN 60) purports to be filed by entities that are not parties to this action, "the Justice & Public Safety Cabinet and the Department of Juvenile Justice." Certain employees or former employees of those entities may be parties to this action, but the entities themselves are not parties. Counsel are again reminded to be cognizant of the actual parties to this action. Based upon the name of counsel who filed the motion for protective order (DN 60), the Court surmises that counsel intended to file it on behalf of those Defendants whom that attorney represents in this action: (1) Michael Price; (2) Kevin Johnson; (3) Lisa Rivers; and (4) Loretta Gaudern. Accordingly, for purposes of this motion, the Court will refer to Defendants Price, Johnson, Rivers, and Gaudern as "Movants." If this assumption as to who makes up the group of "Movants" is incorrect, then **no later than ten (10) days after entry of the instant memorandum opinion and order** counsel of record for those parties shall file a notice as to the actual moving parties.

video recordings of events at Lincoln Village. Specifically, Movants argue that "[p]ublic disclosure of the internal camera footage would reveal features as to the capacity and coverage of key security features of a regional detention center and other Department of Juvenile Justice facilities." (DN 60.)

Movants ask the Court to enter a proposed protective order (DN 60-1 at ¶ 1) that would restrict the use of the video recordings to "legitimate purposes" associated with this action and "Kentucky Claims Commission Claim no. 2016-069," prohibit their use in any other legal proceeding, and prohibit their disclosure to the media or to any other individual. Any other use would be permissible only with the written consent of the producing party or its counsel of record. (*Id.*) The proposed protective order would also require any party wishing to put in the record of this action any portion of a video recording to first file a motion for leave to file such recording under seal. (*Id.* at ¶ 2.) Among the other terms included in the proposed protective order are a provision that would allow the Court to modify the order, "*sua sponte*, upon prior adequate notice," and a provision that would require any party in possession of the subject video recordings to return them to the disclosing party or destroy them within sixty days of the conclusion of this action. (*Id.* at ¶¶ 5-6.) Finally, the Court notes that at least twice in the proposed order, the order is described as an "Agreed Protective Order," but this description is inaccurate as Plaintiffs oppose the motion for protective order. (*See id.* at ¶ 5.)

In response, Plaintiffs set forth three reasons for opposing entry of any protective order related to the Lincoln Village security camera recordings. First, they argue that the two entities purporting to file the motion for protective order lack standing to do so because they are not parties to this litigation. (DN 69 at 1.) The Court addressed this issue in note 1, *supra*, and will

not restate its reasoning here, except to say that the Court construes the motion as being filed by Defendants Price, K. Johnson, Rivers, and Gaudern, who are all parties to this action. Second, Plaintiffs argue that Movants failed to comply with Rule 26(c)(1) of the Federal Rules of Civil Procedure, as they filed the motion for protective order without conferring in good faith with Plaintiffs in effort to resolve the dispute extrajudicially. (*Id.* at 1-2.)

Finally, Plaintiffs argue that Movants have not demonstrated good cause in support of a protective order. They dispute Movants' assertion that public disclosure of the camera footage would reveal security features of Lincoln Village and other Department of Juvenile Justice facilities. (DN 69 at 2.) Specifically, Plaintiffs argue that Lincoln Village was shut down after Gynnya's death, and therefore, the video recordings cannot reveal any security features of that facility, as it is no longer in use. (*Id.*) Additionally, they argue that the Department of Juvenile Justice "already published hundreds of screenshots of the instant security camera video footage to the public via open records," many of which Plaintiffs attached to their complaint in this action, and the complaint is not under seal. (*Id.*) Finally, Plaintiffs argue that to restrict public access to the security camera footage, particularly where Defendants have filed certain footage as an exhibit to a motion to dismiss, would violate the public's strong interest in accessing information in the Court record. (*Id.*) Plaintiffs contend that to enter the proposed protective order "would only cause secrecy that would have the effect of 'insulating the participants, masking impropriety, obscuring incompetence, and concealing corruption.'" (*Id.* (quoting *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1181 (6th Cir. 1983))).)

Movants filed a reply in support of the motion for protective order (DN 85). They assert that while Lincoln Village is no longer operational as a juvenile detention center, it has been transferred to the Kentucky State Police and remains a secure facility. (*Id.* at 1; DN 85-1 (Memorandum of Agreement regarding transfer of use of Lincoln Village facility).) Additionally, Movants dispute Plaintiffs' assertion that any portion of the security camera footage was distributed in response to open records requests, arguing instead that the only person to whom such a report was provided was Michelle McMillen, through her counsel.[2] (*Id.*) Finally, Movants argue that it is "absurd" for Plaintiffs to claim that Movants failed to confer with Plaintiffs prior to filing the motion for protective order. (*Id.* at 2.) Movants assert that the video recordings were originally produced to Plaintiffs' counsel pursuant to a protective order in a related Kentucky Claims Commission case, and that Plaintiffs' counsel attempted to obtain the video footage prior to litigation beginning by promising to keep the recordings confidential. (*Id.*)

## DISCUSSION

Rule 26(c) of the Federal Rules of Civil Procedure sets forth the standard applicable to motions for protective orders. A party from whom discovery is sought may move for a protective order in the court where the action is pending. Fed. R. Civ. P. 26(c)(1). As Plaintiffs point out, the motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without Court action. *Id.*; *see also* LR 37.1 ("The moving party must attach to every discovery motion a certification that counsel have conferred and are unable to resolve their differences. The certification must detail counsel's attempts to resolve the dispute."). The Court may, for good

---

[2] The Court cautions Movants' counsel to avoid attacks on opposing counsel in the course of this action. (*See, e.g.*, DN 85 at 1 ("Any distribution to the media was by Ms. McMillin's [sic] counsel who have apparently adopted the lamentable current fashion of trying their cases in the media rather than the courthouse.").)

cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1).

In this case, neither Movants nor Plaintiffs cite any authority, beyond a passing reference to Rule 26, in support of their positions. The Court will look to decisions of other courts before moving on to apply the principles underlying Rule 26(c)(1) to the present dispute. In a 2016 decision in a case in which the plaintiff alleged that defendant jail employees used excessive force against him in violation of his Eighth Amendment rights, the Western District of Washington addressed a discovery dispute regarding security camera footage from a county jail. *Wright v. Austin*, 2016 U.S. Dist. LEXIS 168646 (W.D. Wash. Dec. 5, 2016). Defendants agreed to allow plaintiff to review a security video at issue, but refused to produce the video or allow it to enter the court record. Defendants' concern was that "dissemination of this video would reveal security vulnerabilities and camera blind spots," and that if the "information was shared with other inmates and the public, it would jeopardize the security and safety of inmates, jail staff and the public." *Id.* at *3 (citation omitted). Defendants also expressed concerns that production of the video could increase the likelihood of inmate escape. *Id.*

After considering the parties' arguments, the court granted defendants' motion for protective order, prohibiting the parties and their counsel from disclosing, sharing, transmitting, or disseminating the video to third parties, "except as may be necessary to prosecute or defend th[e] case." *Id.* at *4. Unless otherwise ordered by the court or agreed to by the parties, the video could only be disclosed to (a) the receiving party's counsel and counsel's employees; (b) experts and consultants; (c) the court and its personnel; (d) deposition witnesses; and (e) records custodians. *Id.* at *4-5. The court emphasized that anyone to whom the video was distributed

were to be instructed not to disclose its contents to third parties and to return all originals and copies after their use was completed. *Id.* As to the reasoning underlying this approach, the court found that, "[w]hile there is value to the openness of our court system which promotes accountability and sheds light on matters of public importance, confidentiality may be necessary in certain cases." *Id.* at *4. The court concluded that defendants showed good cause, "including the security and safety risk to inmates, staff and the public, to preclude unrestricted access of the surveillance video." *Id.* (citing *Fourhorn v. City and County of Denver*, 261 F.R.D. 564 (D. Colo. 2009)).

In *Fourhorn*, a case relied upon by the *Wright* court, the District of Colorado discussed other courts' treatment of matters related to prison security and safety concerns.

> Ample caselaw addressing issues relating to jail or prison security and safety concerns reflects a broad policy against Court interference in matters which affect those concerns. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (noting that it is "beyond question" that jails have a legitimate interest in protecting security pursuant to the policies they enact); *Whitington v. Sokol*, 2008 U.S. Dist. LEXIS 14313, *1-2 (D. Colo. Feb. 14, 2008) (unpublished decision) (recognizing that deference is given to policies put in place to manage jail security and noting that, even if not privileged, jails may have legitimate interest in protecting polices from dissemination which may impact safety concerns, but that those concerns can ordinarily be protected "through redaction or other appropriate measures"). Accordingly, despite the presumption in favor of public access, I find that good cause has been shown to maintain the confidentiality designation of the jail policies at issue. *See Ulibarri v. City & County of Denver*, 2009 U.S. Dist. LEXIS 11178, *4-5 (D. Colo. Feb. 4, 2009) (unpublished decision) (noting that jail policy implicated safety and security concerns such that a confidentiality label did not go far enough to protect it and ordering that certain portions not be produced to plaintiffs and the remainder be produced only under the confidentiality designation).

*Fourhorn*, 261 F.R.D. at 569.

Finally, courts have found persuasive concerns about safety in granting protective orders in relation to security camera footage in retail settings, even though such a setting raises different, less serious concerns than a detention facility. For example, in *Borom v. Menard, Inc.*, 2014 U.S. Dist. LEXIS 118704, *4-5 (N.D. Ind. Aug. 26, 2014), the Northern District of Indiana granted a motion for protective order filed by the defendant retailer, reasoning that its "concerns about theft and frivolous lawsuits is concrete enough to justify a protective order." The court reasoned that "[d]isclosing the footage means disclosing where all the cameras are," and it "would be relatively simple for an enterprising thief or fraudster to compare the footage to the actual layout of the store, discovering the blind spots." *Id.* at *5. Accordingly, the court granted a protective order, requiring that plaintiff not disclose the video footage or camera locations to anyone except the attorneys working on the case, the parties, any consultants or experts, deponents, and court reporters. *Id.* Additionally, such persons were to be informed of the protective order and agree in writing to be bound by it prior to such disclosure. *Id.* at *5-6. Plaintiff could use the footage only for purposes of that lawsuit and was required to destroy the footage or return it to the defendant within thirty days after the lawsuit came to a complete close. *Id.*

Taking into consideration the parties' arguments on Movant's motion for protective order, as well as the reasoning employed by the courts in the decisions discussed above, the Court finds that good cause exists to grant the motion. The Court is persuaded that to allow the production, dissemination, and use of the Lincoln Village video footage to be unrestricted could create security and safety risks to the current staff of that facility and to the public. While Lincoln Village is no longer being a juvenile detention facility, it is now being used by the

Kentucky State Police and remains a secure facility. The Court is concerned about the possible repercussions for the safety of facility staff, potential future detainees, and the public if it were to "interfere[] . . . in matters which affect" jail or prison security and safety concerns. *Fourhorn*, 261 F.R.D. at 569 (citing *Thornburgh*, 490 U.S. at 415). Were the use of the security camera footage available for public consumption, it would be relatively simple for an enterprising person to discover blind spots in the cameras' range or to otherwise exploit the camera footage for their own purposes, especially in light of the fact that the Kentucky State Police agreed to accept the Lincoln Village property in its "as-is" condition. (DN 85-1.) Accordingly, the Court will grant the motion for protective order.

Before moving on, the Court will comment on a few other aspects of the parties' briefs. First, the Court rejects Movants' argument that Plaintiffs' counsel's actions regarding the video footage and confidential medical records in a separate action obviated the need for a Rule 26(c) good-faith attempt to settle this issue extrajudicially. On the contrary, that is a separate matter, and absent a ruling of this Court that Plaintiffs are somehow bound by their attorney's discovery negotiations in that other matter, it was unreasonable for Movants' attorney to assume that Plaintiffs would take the same position in this case and that he need not confer with Plaintiffs' counsel prior to filing the motion for protective order. Second, the Court notes that stills from the security camera footage remain in the record and are not under seal. Absent an opportunity to consider a motion to seal filed separately by any party, the Court will not disturb the way in which those stills currently appear in the record. Finally, the Court will not adopt in full the proposed protective order filed with Movants' motion. Rather, the Court will impose its own terms in the Order section below.

**ORDER**

Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Court's STANDING ORDER requiring counsel to confer with opposing counsel and request and participate in a telephonic conference with the Court prior to filing a discovery-related motion REMAINS IN EFFECT. (*See* DN 57 at 4.)

2. Movants' motion for protective order (DN 60) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **granted** insofar as it requests that the Court enter a protective order in relation to the use of security camera footage from Lincoln Village for purposes of this litigation. The motion is **denied** insofar as it seeks entry of Movants' proposed protective order (DN 60-1); the protective order set forth below is entered in its stead.

3. As of the date of entry of the instant memorandum opinion and order, the PROTECTIVE ORDER set forth below SHALL TAKE EFFECT.

    a. Video recording from Lincoln Village shall be used in this action solely as set forth herein. The instant protective order does not purport to bind the parties with respect to any other action, including, without limitation, the Kentucky Claims Commission action related to this action.

    b. The parties and their counsel of record are prohibited from disclosing, sharing, transmitting, or disseminating the Lincoln Village security video recording to third parties except as set forth herein. Unless otherwise ordered by this Court or expressly agreed to by the parties, the surveillance video may only be disclosed to the following:

i. Counsel of record to parties in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for purposes of this litigation;

ii. Experts and consultants to whom disclosure is reasonably necessary for purposes of this litigation, provided that such expert or consultant is provided with a copy of the instant order and instructed not to disclose the video footage to third parties and to return all originals and copies consistent with this order;

iii. The Court, Court personnel, and any independent court reporters who may be involved in depositions or court proceedings associated with this action; and

iv. Deposition witnesses to whom disclosure is reasonably necessary, provided that such witness is provided with a copy of the instant order and instructed not to disclose the video footage to third parties and to return all originals and copies consistent with this order.

c. If any party wishes to file in the record of this action any portion of the video recordings, such party shall file a motion for leave to file such recordings under seal.

d. No later than sixty (60) days after the conclusion of this lawsuit, including any appeals, all footage and copies thereof shall be either destroyed or returned to the producing party or parties.

4. Finally, the arguments of Movants and Plaintiffs in the instant motion for protective order (DN 60) are duplicative of those in the related motion for protective order (DN 88) later filed by non-party Commonwealth of Kentucky.  The issues raised in the related motion for protective order (DN 88) and response (DN 94) to same are addressed in this opinion and order.  Therefore, the Court DENIES AS MOOT the motion for protective order (DN 88) without comment on whether non-party Commonwealth of Kentucky has standing to bring such a motion.

cc: Counsel of record