UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHELLE MCMILLEN, Individually and     Plaintiffs
as Administratrix of the ESTATE OF
GYNNYA MCMILLEN

v.     Civil Action No. 3:16-cv-00558-RGJ-CHL

REGINALD WINDHAM, ET AL.     Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motions in limine and other pretrial objections filed by Plaintiffs Michelle McMillen, as administratrix of the Estate of Gynnya McMillen ("Gynnya") and Michelle McMillen, individually ("McMillen"), and Defendants Youth Worker Supervisor, Reginald Windham ("Windham"); Youth Worker Supervisor, Victor Holt ("Holt"); Assistant Superintendent, Michael Price ("Price"); Youth Worker, Chris Johnson ("C. Johnson"); Youth Worker, Kevin Johnson ("K. Johnson"); Youth Worker, Lisa Rivers ("Rivers"); and Youth Worker, Loretta Gaudern ("Gaudern") (collectively, "Defendants"). Windham and Holt move to "prohibit the presentation of evidence concerning Defendants' misdemeanor convictions," and to "prohibit the presentation at trial of evidence concerning room checks, or the absence thereof." [DE 205 at 3506, 3507]. C. Johnson moves in limine to exclude "prejudicial conduct and related evidence," and "prejudicial conduct by others." [DE 206 at 3511, 3514]. Plaintiffs move to exclude 1) testimony and evidence about standard of care and/or causation, 2) testimony and argument that Gynnya was a "prisoner" or a "juvenile delinquent," reference to Defendants financial condition or the ability to pay a potential judgment, and 4) potential adverse effects of jury verdict against Defendants. [DE 212]. Gaudern, K. Johnson, Price, and Rivers move to

1

exclude internal operating procedures of the Lincoln Village Regional Juvenile Detention Center as a standard of care and evidence of missed bed checks. [DE 222]. Defendants object to Plaintiffs Exhibit List. [DE 225; DE 229]. Plaintiffs also object to Defendants' Exhibit Lists [DE 226] and Defendants' Witness Lists [DE 227]. Plaintiffs responded to Defendants' Motions in Limine. [DE 228]. The Court heard argument on these matters at the pretrial conference. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions and objections.

## I. BACKGROUND

The factual background was set forth in the Court's summary judgment order [DE 189] and is incorporated here. The relevant facts for each motion are discussed below.

## II. STANDARD ON MOTIONS IN LIMINE

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence in limine under their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). That said, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 810 (N.D.Ohio 2002) (citing *Luce,* 469 U.S. at 41 n. 4). This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling in limine, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *Luce*, 713 F.2d at 1239). Thus, even where a motion in limine is denied, the Court may return to its ruling at trial "for whatever reason it deems appropriate." *Id.* (citing

*Luce*, 713 F.2d at 1239). Likewise, the Court has discretion to alter or amend a prior in limine ruling at trial. *Luce*, 469 U.S. at 41–42.

### III.   DISCUSSION

**A. Windham, Holt, and C. Johnson's Motions in Limine to Exclude evidence of misdemeanor convictions. [DE 205; DE 206]**

Windham and Holt move to exclude evidence of their misdemeanor convictions, including convictions for official misconduct. [DE 205 at 3506]. C. Johnson moves the Court to exclude all his misdemeanor convictions but identifies no such convictions. [DE 206 at 3506].

   *1. Background*

Windham and Holt pleaded guilty to official misconduct for falsification of Gynnya's bed check log documents. [Final Pretrial Conference Transcript 20:9-22:16]. Windham and Holt argue that their convictions are inadmissible character evidence and more prejudicial than probative because there is no evidence that bed checks could have prevented Gynnya's death. [DE 206 at 3507]. Plaintiffs respond that the motion is overbroad and the convictions for official misconduct are evidence of missed bed checks necessary for their claims of negligent hiring, training, supervision, and retention against Windham and Price which require proof of past misconduct in failing to follow Lincoln Village policies and procedures (Standard Operating Procedures or "SOP"). [DE 228 at 3725]. The Court is unaware that C. Johnson has any convictions and counsel was unable to identify any such convictions. [Final Pretrial Conference Transcript 27:5-6].

   *2. Analysis*

Character evidence is generally prohibited under Fed. R. Evid. 404 "to prove that on a particular occasion the person acted in accordance with the character or trait." That said, Fed. R.

3

Evid. 609(a)(2) provides that a witness's character for truthfulness may be attacked by evidence of a conviction "for any crime regardless of the punishment . . . if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." *See also United States v. Washington*, 702 F.3d 886, 892–93 (6th Cir. 2012). A district court lacks discretion to exclude a crime of dishonesty or false statement from evidence. *See id.*; *United States v. Rodriguez,* 409 Fed.Appx. 866, 869 n. 2 (6th Cir. 2011).

A crime of dishonesty or false statement involves some element of active misrepresentation. *Washington*, 702 F.3d at 893. The advisory committee notes to the Federal Rules of Evidence state that crimes of "dishonesty and false statement" include "perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi,* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Fed. R. Evid. 609 advisory committee's note. "These offenses share a common thread: in each, the witness deliberately committed acts of falsification with an eye toward deceit." *United States v. Parker*, 17 F. Supp. 3d 676, 678–79 (W.D. Ky. 2014). "It is this essential characteristic that makes these crimes probative of a witness' propensity to testify truthfully." *United States v. Cameron,* 814 F.2d 403, 405–06 (7th Cir. 1987); *Washington*, 702 F.3d at 893 ("The rule is intended to inform fact-finders that the witness has a propensity to lie . . ."); *see also* Fed. R. Evid. 609 advisory committee's note (explaining that *crimina falsi* generally include only those crimes "in which the ultimate criminal act was itself an act of deceit"). "Evidence of all other convictions is inadmissible under this subsection, irrespective of whether

4

the witness exhibited dishonesty or made a false statement in the process of the commission of the crime of conviction." *Parker*, 17 F. Supp. 3d at 679.

The factual basis for Windham and Holt's plea on their misdemeanor convictions is the falsification of the bed check documents. [Final Pretrial Conference Transcript 20:9-22:16]. As a result, Windham and Holt admit a dishonest act or false statement as part of their guilty plea and the ultimate criminal act—falsification of records—was itself an act of deceit, thus satisfying Fed. R. Evid. 609(a)(2). If Plaintiffs cross-examine Windham and Holt about their character for truthfulness, their prior convictions for falsification of the bed check logs may be used. Plaintiffs may not use the convictions for any other purpose. Windham and Holt's motion to exclude evidence of misdemeanor convictions [DE 205] is **DENIED**. C. Johnson's motion to exclude misdemeanor convictions [DE 206] is **MOOT** as the parties have identified no misdemeanor conviction related to C. Johnson.

**B. Defendants' Motions in Limine to exclude evidence of bed checks [DE 205; DE 206; DE 222] and Gaudern, K. Johnson, Price, and River's Objection to Exhibits and evidence relating to bed checks [DE 225].**

All Defendants move to exclude evidence of missed bed checks unless offered with proof of causation, and Gaudern, K. Johnson, Price, and Rivers Object to Plaintiffs' exhibits and other evidence relating to bed checks. [DE 205 at 3508-09; DE 206 at 3514; DE 222 at 3700-01; DE 225 at 3709-10].

*1. Background*

As part of Lincoln Village's rules and regulations, Lincoln Village employees were required to conduct bed checks at set intervals, including at least every fifteen minutes during sleep hours. [DE 1 ¶ 22; DE 1-4 at 53]. During the bed checks, employees were to verify that the resident was safe and secure in the room, and then document the check on the Unit Room

Observation Sheet. [*Id.*]. Defendants placed Gynnya in Room 423 at 6:22 a.m. and removed her later that day at 3:44 p.m. [DE 1 ¶ 28]. During that time, the Lincoln Village staff failed to perform and falsified records for twenty-three required bed checks of Room 423. [*Id.* ¶ 37]. From the time Gynnya returned to Room 423 at 5:19 p.m. until 11:39 p.m., the Lincoln Village staff failed to perform and falsified records for another twelve required bed checks of Room 423. [*Id.* ¶ 38]. And from 10:35 p.m. to 11:39 p.m., Windham personally failed to perform four required bed checks. [*Id.* ¶ 39].

At 11:39 p.m., Windham heard coughing coming from Room 423. [*Id.* ¶ 40]. He went "to check on [Gynnya] to make sure she had not thrown up and was choking or something like that." [*Id.*] In conducting the check, Windham looked through the narrow slit in the door for about 18 seconds, during which he saw Gynnya turn onto her right side and her left leg hanging off the bed at the knee. [*Id.* ¶ 42–43]. Windham then returned to his desk. [*Id.* ¶ 43]. He falsified twenty-four more bed checks between the time he checked on Gynnya at 11:39 p.m. and the time Holt and C. Johnson discovered Gynnya the next morning. [*Id.* ¶ 49].

Defendants move to exclude evidence of missed bed checks and falsified bed checks unless presented with evidence of causation related to Gynnya's death. [DE 205 at 3508-09; DE 206 at 3514; DE 222 at 3700]. Windham, Holt, and C. Johnson argue that the Court should exclude all bed checks except for the check conducted by Windham at 11:37 p.m. on January 10, 2016. [DE 205 at 3508-09; DE 206 at 3514]. The other Defendants argue that all evidence related to bed checks should be excluded because they did not cause Gynnya's death. [DE 205 at 3507; DE 206 at 3512; DE 222 at 3700-01]. Gaudern, K. Johnson, Price, and Rivers further argue that the bed checks are not relevant because none of the claims against them involve bed checks and because they are evidence of other wrongs or bad acts under FRE 404(b). [DE 222 at 3701; DE 225 at

3709]. C. Johnson also argues that, since he was not involved in bed checks, the Court should exclude all evidence related to bed checks unless such conduct directly relates to Gynnya's intake process. [DE 206 at 3513; Final Pretrial Conference Transcript 26:24-27:12].

Plaintiffs respond that Defendants' argument to exclude all evidence or testimony other than the conduct of Defendants during Gynnya's intake process is overly broad and void of context. [DE 228 at 3724]. Plaintiffs assert Defendants waived this argument by including multiple exhibits that have nothing to do with this process. [DE 228 at 3724-25]. Plaintiffs also argued at the pretrial conference that the bed checks are relevant for three reasons. [Final Pretrial Conference Transcript 27:15-28:19]. First, that evidence of missed bed checks proves Windham was negligent because he never went into Gynnya's cell to check if she was breathing. [*Id.*] Second, the missed bed checks are relevant to punitive damages as to whether the negligence was a repeated action or isolated incident. [*Id.*] Finally, the convictions are relevant to claims of negligent hiring, training, supervision, or retention, as these claims necessarily require proof of past misconduct. [*Id.*]

## 2. Analysis

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relatedly, Fed. R. Evid. 402 explains that "[i]rrelevant evidence is not admissible." Importantly, the test for relevancy presents a low bar of entry. *See Cambio Health Solutions, LLC v. Reardon*, 234 Fed.Appx. 331, 338 (6th Cir. 2007); *see also United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) ("The standard for relevancy is extremely liberal") (internal quotation marks omitted). As the Sixth Circuit has explained, "even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *DXS, Inc. v. Siemens Med. Sys.*,

7

*Inc.*, 100 F.3d 462, 475 (6th Cir. 1996); *see also Marshall v. Rawlings Co., LLC*, No. 3:14-CV-359-TBR, 2018 WL 1096436, at *2 (W.D. Ky. Feb. 28, 2018).

The Court may, however, exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendants argue the missed bed checks are not relevant because they do not believe there is any evidence that the missed bed checks caused Gynnya's death. [DE 205 at 3507; DE 206 at 3512; DE 222 at 3700-01]. However, the missed bed checks are evidence concerning conduct that is part and parcel of the underlying events. The missed bed checks are inextricably intertwined with Gynnya's treatment at Lincoln Village leading up to the time of her death, they are relevant to the various negligence and punitive damage claims and, at a minimum, have probative value to the issue of causation. *See Smith v. Pfizer Inc.*, 714 F. Supp. 2d 845, 854 (M.D. Tenn. 2010). But specifically, the missed bed checks and other actions of the defendants form the *res gestae* of the case.

The substantial probative value of the missed bed checks to the jury issues would not be outweighed by the danger of unfair prejudice or other Fed. R. Evid. 403 concerns. The Sixth Circuit has consistently held that the level of unfair prejudice necessary to exclude otherwise relevant evidence is a high bar to meet and must be of the ilk to suggest a decision be made on an improper basis. *U.S. v. Johnson*, 581 F.3d 320, 327 (6th Cir. 2009) ("[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis"); *Sutkiewicz v. Monroe Cty. Sheriff*, 110 F.3d 352, 360 (6th Cir.

1997); *Doe v. Claiborne County,* 103 F.3d 495, 515 (6th Cir. 1996) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993)). Rule 403 operates to preclude evidence only if it is prejudicial in the sense that the jury cannot rationally evaluate it. *See In re Air Crash Disaster*, 86 F.3d 498, 538 (6th Cir. 1996) ("Rule 403 does not exclude evidence because it is strongly persuasive or compellingly relevant – the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate. The truth may hurt, but Rule 403 does not make it inadmissible on that account.").

While the parties express concerns that a jury may hold defendants responsible for missed bed checks that were the responsibility of individuals other than defendants, the Court has warned the parties that they must be specific in indicating which defendant (or whether a non-defendant) was involved in any missed bed checks when discussing the evidence. Further, the mere fact that individuals not involved in the case were responsible for some of the missed bed checks does not necessarily render the evidence irrelevant. *Marshall*, 2018 WL 1096436, at *2 ("Certainly, Bradshaw is not a party to this action, nor are any other individual employees of Rawlings. However, this alone does not render complaints against Bradshaw, an important player in Marshall's employment with Rawlings, completely irrelevant to the issue of Marshall's demotion and termination from the company"). The Court cautioned the parties that use of generalizations, such as "they" (referring to all the defendants) missed bed checks, would not be permitted at trial. These safeguards are sufficient, along with the Court's power to issue instructions to the jury if necessary, to prevent any undue prejudice by the admission of this relevant evidence.

Furthermore, the missed bed checks are not a prior bad act under Fed. R. Evid. 404(b) as applied to the specific defendants who performed (or failed to perform) bed checks because they were part of the factual acts of the defendants in this case. Rule 404(b) plays no role here because

the evidence of the missed bed checks is the *res gestae* of the case. *Sanford v. Russell*, 531 F. Supp. 3d 1221, 1228 (E.D. Mich. 2021) (citing *See United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018) and stating "[t]he evidence concerns conduct that is part and parcel of the underlying events in the case, which is admissible under the generally recognized *res gestae* exception to Rule 404(b), because it does not concern extrinsic and unrelated conduct offered solely to prove character or credibility. The recommendation of perjury charges is the premise that sets the stage for Tolbert's reaction to that possibility and is part of a narrative 'the telling of which is necessary to complete the story of the charged offense.'"); *Smith v. Pfizer Inc.*, 714 F. Supp. 2d at 854–55 (citing *United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir.1995)) ("The rule does not apply, however, to 'intrinsic' acts that are part of a single bad act; thus, 'Rule 404(b) is not implicated when the other [bad acts are] part of a continuing pattern of illegal activity.' Here, the coordinated marketing campaign is not a 'prior bad act.' Instead, it is an ongoing act that forms the basis of the plaintiff's negligence claim.").

Even if the missed bed checks were bad acts evidence, they would be admissible for two reasons. First, prior bad acts evidence is admissible for claims of negligent hiring, training, supervision, or retention, which is one of Plaintiffs' remaining claims against Windham and Price. *See, e.g.*, *Wilson v. Greyhound Lines, Inc.*, No. 13-CV-3013-SHL-CGC, 2016 WL 8314608, at *2 (W.D. Tenn. Jan. 19, 2016). Second, they could be admissible for one of the proper purposes in Fed. R. Evid. 404(b): "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Defendants' Motions in Limine to Exclude evidence of bed checks [DE 205; DE 206; DE 222] are **DENIED** and Gaudern, K. Johnson, Price, and River's Objection to Exhibits and evidence relating to Bed Checks [DE 225] are **OVERRULED**.

**C. Gaudern, K. Johnson, Price, and River's Motion in Limine to prohibit Plaintiffs from mentioning or arguing that the internal operating procedures of Lincoln Village are a standard of care for Defendants [DE 222], and Windham, Holt, Gaudern, K. Johnson, Price, and River's Objection Plaintiffs' Exhibits 179, 205, and 206 [DE 225; DE 229].**

   *1. Background*

Plaintiffs list Lincoln Village's SOPs as Exhibits 179, 205, and 206 on their proposed Exhibit List. [DE 211]. Windham, Holt, Gaudern, K. Johnson, Price, and Rivers argue that the Court should exclude these exhibits based on the Summary Judgment Order [DE 189] which held that the SOPs cannot be the basis for a standard of care. [DE 225 at 3710; DE 229 at 3730]. As a result, the SOPs has little probative value and would confuse the jury. *Id.* For the same reason, Gaudern, K. Johnson, Price, and Rivers argue that Plaintiffs should be prohibited from arguing that SOPs are a standard of care for the Defendants. [DE 222 at 3700].

Plaintiffs argue that Defendants had a ministerial duty to follow their SOPs, which are standards of care to guide the jury's determination of whether the Defendants behaved negligently. [DE 228 at 3726]. Plaintiffs argue the Court ruled in the Summary Judgment Order that "the Sixth Circuit 'has recognized that consideration of a standard operating procedure is appropriate in considering the scope of duty flowing from the defendant to a plaintiff in a negligence action.'" [DE 189 at 3427 citing *Keir v. United States*, 853 F.2d 398, 413 (6th Cir. 1988)].

   *2. Analysis*

While SOPs do not necessarily create duties or define the precise scope of the duty owed, the Sixth Circuit has repeatedly recognized that SOPs are relevant in considering the scope of the duty of care owed. *See Keir v. United States*, 853 F.2d 398, 413-14 (6th Cir. 1988) *and Estes v. King's Daughters Med. Ctr.*, 59 Fed. Appx. 749, 756-57 (6th Cir. 2003). The SOPs are thus relevant to the duty of care the Defendants owed to Gynnya. For these reasons, the Defendants'

11

Motion in Limine [DE 222] is **DENIED** and Defendants' Objection to Plaintiffs Exhibits 179, 205, and 206 [DE 225; DE 229] is **DENIED**.

### D. Plaintiffs' Motion in Limine to exclude Testimony and Evidence Regarding Standard of Care and/or Causation. [DE 212]

Plaintiffs move to exclude expert testimony or evidence not properly identified in their Rule 26 disclosures. [DE 212 at 3574]. Defendants do not oppose this motion. As discussed during the pretrial conference, the Court will not permit Defendants to call expert witnesses not disclosed in conformity with Rule 26(a)(3) without first obtaining leave of the Court by showing harmlessness or substantial justification for not disclosing earlier. As a result, Plaintiffs' Motion in Limine to exclude [Expert] Testimony and Evidence [DE 212] is **GRANTED**.

### E. Plaintiffs' Motion in Limine to exclude Testimony and Argument that Gynnya McMillen was a "prisoner" or a "juvenile delinquent." [DE 212]

Plaintiffs move to exclude any testimony or argument that Gynnya was a "prisoner" or "juvenile delinquent" as false and irrelevant. [DE 212 at 3574]. Defendants do not oppose this motion. As discussed during the pretrial conference, counsel will prepare their witnesses to refer to Gynnya with appropriate terminology and will not refer to her as a "prisoner," "juvenile delinquent," or the like. Accordingly, Plaintiffs' Motion in Limine [DE 212] is **GRANTED**.

### F. Plaintiffs' Motion in Limine to exclude References to The Financial Conditions of Defendants and/or the Ability to Pay a Potential Judgment and Potential Adverse Effects of Jury Verdict Against Defendants. [DE 212]

Plaintiffs move to exclude "any suggestion that there is no insurance coverage or state indemnification for the acts complained of in this action or that the Defendants will have to pay 'out of pocket' or be personally financially responsible for a judgment should be excluded because such suggestions are wholly irrelevant and false. " [DE 212 at 3575]. Plaintiffs also move to prohibit Defendants from "arguing that a jury verdict in favor of Plaintiffs will adversely affect

the career or life of any of the Defendants or their employees" because these arguments would be irrelevant. [DE 212 at 3575]. Defendants do not oppose this motion. As ruled from the bench during the pretrial conference, the Plaintiffs' Motion in Limine [DE 212] is **GRANTED**.

## G. Gaurdern, K. Johnson, Price, and River's Objection to witness statements and communication of investigators during the investigation of Gynnya McMillen's death. [DE 225]

Gaudern, K. Johnson, Price, and Rivers object to witness statements and communication to investigators during the investigation of Gynnya's death listed on the Plaintiffs' Exhibit list as 51, 68, 69, 70, 71, 73, 74, 75, 77, 78, 79, 80, 82, 83, 84, 85, 86, 87, 88, 89,90, 91, 92, 93, 94, 95, 96, 97, 102, 104, 106, 107, 108, 109, 110, 111, 112, 113, 114, 120, 120, 121, 122, 123, 124, 128, 129, 130, 131, 132, 133, 137 through 154, 158 through 163, 170 through 175. [DE 225 at 3710]. Defendants object to these exhibits because "such statements are hearsay as to any statement other than a statement by the Defendant." [*Id.*]

The Court reads this motion as a request to have Plaintiffs abide by the Federal Rules of Evidence, specifically Rule 801 about hearsay. The Court expects Counsel to abide by the Federal Rules of Evidence. This motion in limine presents no issue for the Court to decide. As ruled from the bench during the pretrial conference, Defendants Gaurdern, K. Johnson, Price, and River's Objections [DE 225] is **DENIED AS MOOT** at this time.

## H. Plaintiffs' Objections to Windham, Holt, and C. Johnson's Exhibit Lists. [DE 226]

### *1. Background*

Michelle McMillen was with Gynnya and called 911 after a dispute with her daughter. [DE 226 at 3713]. A police officer picked up Gynnya and transferred her to Lincoln Village. *Id.* Plaintiffs' Expert Dr. Peter Schwartz is expected to testify that the cause of Gynnya's death at Lincoln Village was long QT syndrome. [DE 1-18 at 114]. Defendants suggested at the pretrial

13

conference that Dr. Schwartz may testify that Gynnya's condition could have been brought on by the stress of the intake and search. [Final Pretrial Conference Transcript 44:20-45:1].

Windham, Holt, and C. Johnson's Exhibit Lists included, "Dispatch audio/radio traffic from the arrest of the juvenile Plaintiff decedent and her transport to [Lincoln Village]," an "Investigation letter report January 10, 2016 Officer Brian Beeler, Badge 220, Shelbyville Police regarding his contact with, and observations of, Plaintiff decedent and Michelle McMillen on January 10, 2016 at approximately 0146 hours or 3:13," "Investigation letter report of Jeff McClellan, Badge 216, regarding his contact with, and observations of, Plaintiff decedent, and Michelle McMillen on January 10, 2016," "Investigation letter report of Jeff McClellan, Badge 216, regarding his contact with, and observations of, Plaintiff decedent, and Michelle McMillen on January 10, 2016," and "[p]leadings, exhibits, and/or other documents filed in any legal proceeding in which Michelle McMillen is and/or was a party." [DE 200 at 3477-79; DE 202 at 3494-97]. Plaintiffs object to these exhibits as confusing to the jury and unduly prejudicial. [DE 226 at 3712-14]. Plaintiffs also argue that the Court should exclude investigation reports as hearsay. [*Id.*].

Defendants respond that, if Dr. Schwartz argues that the stress of the intake and search brought on Gynnya's QT syndrome and caused her death, the Defendants should be allowed to cross-examine Dr. Schwartz about other stressors in her life, including the evidence from these listed exhibits. [Final Pretrial Conference Transcript 44:20-45:20].

   2. *Standard*

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may exclude relevant evidence "if its probative value is substantially

14

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Questions of foundation are typically reserved for trial so that they can be "resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010).

Under Fed. R. Evid. 801(c) "hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Under Fed. R. Evid. 801(d)(2), an opposing party's statement is not hearsay so long as it: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

    3. *Analysis*

If Dr. Schwartz testifies about stress contributing to Gynnya's death, then the listed exhibits could be admissible with the proper foundation. If Dr. Schwartz testifies that the stress of the intake and search could have brought on Gynnya's long QT syndrome and caused her death, the Defendants could cross-examine him generally about the listed exhibits, and their possible effect as stressors in Gynnya's life. Conversely, if no foundation is laid for this cross-examination, Defendants would be unable to cross-examine Dr. Schwarz about these stressors in Gynnya's life.[1]

---

[1] The investigation reports are not necessarily hearsay. While police reports are often excluded as hearsay, in limited circumstances they may qualify under the public records exception of Fed. R. Evid. 803(8). *See Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994). Without the report and the officer's accompanying testimony about his investigation, the Court cannot determine whether the exception applies.

Additionally, specific to McMillen's past legal proceedings, Dr. Schwartz's deposition testimony discussed the stress she was under in the "24 to 48 hours" proceeding death. [DE 146-1 at 2456]. The Court does not have all of McMillen's past legal proceedings, but there is nothing to suggest that they occurred in this short window of time. Without such a foundation laid, McMillen's past legal proceedings do not appear to be relevant to this small window prior to Gynnya's death.

For these reasons, Plaintiffs' Objection [DE 226] is **DENIED** subject to proper foundation at trial.

### I. Plaintiffs' Objections to Windham, Holt, and C. Johnson's Exhibit "Jefferson 9 CICRB Findings and Recommendations Review date: September 8, 2015." [DE 226]

Plaintiff objects to Windham, Holt, and C. Johnson's listed exhibit "Jefferson 9 CICRB Findings and Recommendations Review date: September 8, 2015" because the description lacks enough detail to permit adequate identification as required by Rule 26. [DE 200 at 3478; DE 202 at 3496; DE 226 at 3714]. Defendants do not oppose this objection. Accordingly, Plaintiffs' Objection to exhibit "Jefferson 9 CICRB Findings and Recommendations Review date: September 8, 2015" [DE 226] is **GRANTED** and a proper description will be provided, or the exhibit stricken.

### J. Plaintiffs' Objection to Report of Dr. Thomas Andrew dated September 27, 2018 [DE 226] and Witnesses Dr. Thomas Andrew [DE 227]

Plaintiffs object to expert testimony or evidence by the Defendants, arguing that they did not disclose Dr. Andrew as an expert witness at their Rule 26 disclosures. [DE 226 at 3714; DE 227 at 3721-22]. Defendants do not oppose and Plaintiffs' Objection [DE 227] is **GRANTED**.

**K. Plaintiffs' Objection to Defendants' Witness List [DE 227]**

   *1. Background*

Plaintiffs object to witnesses identified by Defendants on their Witness Lists, specifically Gena Johnson, Nancy A. Dupin, Isiah Higgins, Officer Brian Beeler, Officer Michael Berkley, Officer Andrew Ware, Officer Jeff McClellan, Dr. Lauren Lippincott, Dr. Donna Stewart, Judy Lambeth, Morgan Moody, Angela Rogers, Leslie K. Delgado, Ronald Caldwell, James C. Wise, and William G. Mitchell. [DE 227 at 3717-22]. Plaintiffs object to each of these witnesses as they were not identified by Defendants in their Fed. R. Civ. P. 26 26(a)(1) Initial Disclosures or during discovery, and because "Defendants have not identified the subject matter of this witness's testimony and the purpose for which the testimony is to be offered pursuant to Fed. R. Civ. P. 26(a)(3)(B) and this Court's Trial Order." [*Id.*].

   *2. Analysis*

Fed. R. Civ. P. 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the order listed in Rule 37 (b)(2)(A)(i)-(vi)." "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was substantially justified or harmless." *Dickenson v. Cardian & Thoracic Surgery of E. Tenn. P.C.*, 388 F.3d 976, 983 (6th Cir. 2004).

Witnesses not disclosed in conformity with Rule 26(a)(3) may not be used at trial without first obtaining leave of the Court to use them based on a showing of harmlessness or substantial justification for not disclosing them earlier. For these reasons, Plaintiffs' Objection to Defendants' Witness List [DE 227] is **GRANTED**.

## CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Windham and Holt's motion to exclude evidence of misdemeanor convictions [DE 205] is **DENIED**. C. Johnson's motion to exclude misdemeanor convictions [DE 206] is **MOOT** as the parties have identified no misdemeanor conviction related to C. Johnson;

(2) Defendants' Motions in Limine to Exclude evidence of bed checks [DE 205; DE 206; DE 222] are **DENIED** and Gaudern, K. Johnson, Price, and River's Objection to Exhibits and evidence relating to Bed Checks [DE 225] are **OVERRULED**;

(3) Defendants' Motion in Limine [DE 222] is **DENIED** and Defendants' Objection to Plaintiffs Exhibits 179, 205, and 206 [DE 225; DE 229] is **DENIED**;

(4) Plaintiffs' Motion in Limine to exclude [Expert] Testimony and Evidence [DE 212] is **GRANTED**;

(5) Plaintiffs' Motion in Limine [DE 212] is **GRANTED**;

(6) Defendants Gaurdern, K. Johnson, Price, and River's Objections [DE 225] is **DENIED AS MOOT** at this time;

(7) Plaintiffs' Objection [DE 226] is **DENIED** subject to proper foundation at trial;

(8) Plaintiffs' Objection to exhibit "Jefferson 9 CICRB Findings and Recommendations Review date: September 8, 2015" [DE 226] is **GRANTED** and a proper description will be provided, or the exhibit stricken;

(9) Plaintiffs' Objection [DE 227] is **GRANTED**;

(10) Plaintiffs' Objection to Defendants' Witness List [DE 227] is **GRANTED**.

Copes to:   Counsel of record